# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

| | |
|---|---|
| STONE SOUP MARKET & CAFÉ, INC., individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>WASTE INDUSTRIES, LLC; & GFL ENVIRONMENTAL, INC.,<br><br>          Defendants. | C/A 7:24-cv-1137-TMC<br><br>**CLASS ACTION COMPLAINT**<br>**(Jury trial demanded)** |

On behalf of herself and all others similarly situated, Plaintiff alleges as follows:

## I.    PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Stone Soup Market & Café, Inc., is a South Carolina corporation with its principal place of business in Spartanburg County, South Carolina.

2.    Defendant Waste Industries, LLC, is a North Carolina limited liability company with its principal place of business in Wake County, North Carolina.  This defendant is authorized to do business in the state of South Carolina and does conduct substantial business here as "GFL Environmental."

3.    Defendant GFL Environmental, Inc. ("GFL") is a foreign corporation with its principal place of business in Ontario Canada.  Defendant GFL's U.S. headquarters is located in Wake County, North Carolina.

1

4.     Defendant GFL is the parent corporation of Defendant Waste Industries, LLC.

5.     Defendants GFL and Waste Industries provide non-hazardous solid waste and recycling, and collection of waste disposal from commercial and household customers throughout the southeast, including within the state of South Carolina.

6.     The defendants operate as a single organization with regard to the conduct at issue in this action. Defendant Waste Industries, LLC, a wholly owned subsidiary of Defendant GFL, is an alter ego of Defendant GFL. In the service contracts entered into by plaintiff and the putative class members, the service provider is listed as Waste Industries, LLC d/b/a GFL Environmental, Inc. The service contracts all bear the GFL logo. The defendants share management structure and financial accounting and, as such, any legal distinction between these entities is a fiction designed to limit liability. Defendant GFL assesses the fees and rate increases at issue, determines the amount of these fees and rate increases, invoices the customers at issue, and collects payment of these fees in this District. Management level decisions of the defendants are made by Defendant GFL.

7.     Defendant GFL designed, implemented, charged, and collected the fees and rate increases at issue in the below allegations. These fees benefited Defendant GFL.

8.     This Court has personal jurisdiction over these defendants for a number of reasons including:

      a. Defendant Waste Industries, LLC, a subsidiary of Defendant GFL, is authorized to do business in this District;

2

b.  The defendants do conduct business in this District;

c.  The claims asserted in this case arise out of and relate to the defendants business conduct and contacts within this District;

d.  The defendants pay taxes in the District;

e.  The defendants enter into contracts in this District for services to be performed in this District;

f.  The defendants own property in this District including at 3010 US-378 Conway, SC 29527 and 1635 Antioch Church Road, Piedmont, SC 29673;

g.  The defendants have numerous employees in South Carolina who provide services; and

h.  Based on its contacts, the defendants reasonably anticipate litigation arising from or relating to their conduct within this District such that it would not be unfair to subject them to the jurisdiction of this Court.

9.    As discussed below, Defendant GFL exercises such dominion and control over its subsidiary, Defendant Waste Industries, LLC, that venue is proper and jurisdiction appropriate over all defendants in this District.

10.    This District may import the contacts of any one entity in the alter ego structure to all others.

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Defendants are citizens of a different state than plaintiff and there exists complete diversity.

3

12.    The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13.    Venue is proper under 28 U.S.C. § 1391 and the Local Rules of this Court. Plaintiff is located in this District, the defendants South Carolina operations are located in this District, and the conduct giving rise to these claims occurred in this District.

## II.    FACTUAL ALLEGATIONS

14.    GFL is one of the largest waste disposal companies operating in Canada and the United States, with operations in twenty-six states and billions in annual revenue.

15.    Plaintiff, and the putative class members, require solid waste disposal services.

16.    Plaintiff entered into a standardized service agreement with the defendants to provide such services.  These long-term agreements set the rate for these disposal services.

17.    The agreement provides a provision by which the defendants may increase rates to pass through specific cost increases incurred by defendants during the term, and any renewal terms, of the agreement.

18.    The core allegation in this action is that the defendants, after locking Plaintiff into a long-term contract, systematically increased rates and unilaterally imposed unlawful Fuel and Environmental Recovery.

4

19.    Plaintiff Stone Soup Market and Café is a restaurant and market in Landrum, South Carolina.

20.    On February 25, 2020, Plaintiff entered into a form agreement with Defendant GFL for waste management services.

21.    The basic terms of the agreement are payment of a fixed monthly charge of $130.00 per month for weekly waste haul-off and disposal of an eight yard commercial trash dumpster plus additional fees.

22.    The term of the agreement is for 60 months with automatic 12 month renewals unless cancelled by either party.

23.    In addition to the fixed monthly charge, the additional fees agreed to are a delivery fee of $30.00 and extra pickup fee of $75.00 per extra weekly pickup requested.

24.    In addition, Plaintiff agreed to be responsible for sales tax, use tax, fees, surcharges and other charges imposed for waste collection, transportation, and disposal.

25.    Last, the form agreement contains an "ADJUSTMENTS" clause in which Defendant GFL retains the right to increase the schedule of charges:

> **2) Adjustments:** Because disposal, processing and fuel costs are a significant portion of the costs of Our services provided hereunder, We may increase the schedule of charges proportionately to reflect any increase in such costs, plus an appropriate mark-up. We may also adjust the schedule of charges based on other factors, including, without limitation, increases in landfill fees, the Consumer Price Index, the

5

Transportation Index and / or other similar benchmark indices. Where the schedule of charges includes disposal as a component of the charges, disposal will mean the posted gate rate for the disposal at the disposal facility that We utilize plus an appropriate mark-up. You and We agree that the schedule of charges is based upon the estimated average Waste weight that is specified on the reverse side of the this page for each cubic yard. If your Waste exceeds the average Waste weight agreed to herein, We may increase the schedule of charges proportionately to reflect the additional average Waste weight. Subject to Your approval, the fees may be adjusted for other reasons.

23.    The form agreement also provides that "Changes in services provided by Us or in the fees and charges paid by You may be made only by a written agreement between You and Us."

24.    Since entering into the form agreement, Plaintiff has continuously paid the service charges to Defendant GFL.

25.    Since entering into the five-year agreement with Defendant GFL, Plaintiff has seen the amount of its billing invoices increase.

26.    Plaintiff's billing invoices increased sharply in December 2022 when its bill almost doubled its previous average.

27.    The increase is attributable to both an increase in the base rate for monthly waste disposal and additional surcharges / fees described as a "Fuel Surcharge," "Oil/Environmental & Fees," "Environmental Surcharge," and regulatory surcharges on Plaintiff's billing invoices.

28.    The Fuel / Environmental surcharges have recently averaged around $44 per month.

6

29.   Plaintiff has not approved, nor been asked to approve, this additional surcharge.

30.   Plaintiff has never been asked to approve in writing any increase to the base rate for waste disposal services in its agreement with defendants.

31.   Defendant GFL has not explained or set forth what the additional Fuel / Environmental surcharge accounts for other than to include a generic indicator in its invoice such as "Due to the rising cost of operations, your invoice may reflect the increase in cost" or "Your invoice may reflect the increase in Operational Expenses."

32.   Notably, despite domestic fuel prices decreasing since a high in the summer of 2022, the Fuel / Environmental surcharges have not decreased.

33.   Notably, this increased surcharge exceeds, if any, the increases in the Consumer Price Index ("CPI") or disposal costs that Defendant GFL may incur.

34.   Defendant GFL implements this rate or surcharge increase even in periods where the CPI or disposal costs decrease.

35.   According to Defendant GFL, it is able to successfully adjust pricing to reflect increases in its operating costs such as fuel, logistics and other environmental expenses to broadly ensure "appropriate returns on capital."

36.   Defendants utilize these "price optimization" strategies to grow their revenues.

37.    With respect to Plaintiff's agreement with Defendants, the rate increase and fees / surcharges imposed on Plaintiff have not actually fluctuated with or track with the underlying fuel costs or indices upon which they are allegedly based.

38.    Defendants do not disclose to Plaintiff or its other customers how its rate increases, fees and surcharges are calculated or whether they are fairly imposed as set forth under the terms of the form agreement for services.

## III.    CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action under Rule 23(a) and (b)(3), FRCP, and proposes the following two classes:

   a.  All entities and people who reside in South Carolina who entered into a written contract with GFL that provides that "Changes in services provided by Us or in the fees and charges paid by You may be made only by a written agreement between You and Us" and who – within the applicable statute of limitations – paid rates to GFL in excess of those originally listed in the written contract as a result of rate increases. Below this is referred to as the "Rate Increase Class."

   b.  All entities and people who reside in South Carolina who, within the applicable statute of limitations, paid GFL an "Oil / Environmental Fee" or "Fuel Surcharge" or "Environmental Surcharge." Below is this referred to as the "Surcharge Class."

40.    Excluded from the classes are any governmental entities or municipalities who entered into "Transportation and Disposal Agreements" with Defendant GFL.

41.    Plaintiff seeks to represent these proposed classes as class representative.

42.    Excluded from the proposed classes are (1) any customer who entered into an agreement which contains an arbitration provision or class waiver (to the extent such

a provision is enforceable and applicable and only for the time period or claims to which it applies); (2) any customer who has signed a release of any claims against Defendant GFL; (3) any customer who makes timely election to be excluded from the Class; (4) any parents, subsidiaries, affiliates, officers, or directors of Defendant GFL; (5) and any entity in which Defendant GFL has a controlling interest; (6) members of the judiciary who preside over this case or related litigation; (7) entities currently in a bankruptcy or whose obligations have been discharged in bankruptcy; and (8) governmental entities.

43.    Plaintiff reserves the right to assert additional classes or subclasses or issues classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

### a. Numerosity

44.    The total number of members of the two proposed classes are so numerous that individual joinder is impracticable. Defendant GFL has hundreds if not thousands of customers in South Carolina who entered into the form contract and paid the Oil / Environmental & Fees surcharge.

### b. Typicality

45.    The claims of Plaintiff are typical of the claims of the two classes.

46.    Plaintiff, like the putative class members, entered into the same form agreement, paid rate increases that were not legally justified under the form

agreements, and paid Oil / Environmental & Fees and Fuel Surcharges. Plaintiff was subject to, and harmed by, the same common policies and practices which led to these service rate increases and fees amongst all class members.

### c. Adequacy

47.    Plaintiff will fairly and adequately protect the interests of the putative class members and has no interest antagonistic to those of the other putative class members.

48.    Plaintiff shares the same interests and same alleged harm as each other putative class member. Plaintiff seeks through this action to remedy that harm for both her own benefit and the benefit of the class equally.

49.    Plaintiff has retained competent class counsel that has class action experience and is willing to participate fully in this litigation on behalf of the putative class members.

### d. Superiority and manageability

50.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy.

51.    It would be impracticable to join all members of the proposed classes.

52.    While the total amount of the rate increases and Fuel Surcharges are significant in the aggregate, the individual damages to the putative class members

are relatively small and the class members and class counsel would have little incentive to pursue individual claims.

53.    Judicial economy favors adjudicating this action in a single forum rather than on an individual basis to ensure consistent adjudications and uniformity of decisions.

### e.  Ascertainability

54.    The proposed class definitions are objective and class membership is easily determined using customer information and financial records maintained by Defendant GFL for its South Carolina customers.

### f.  Predominance of common questions of law and fact

55.    Defendant GFL engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this action.

56.    This common course of conduct – the imposition of Oil / Environmental & Fees, Fuel Surcharges, and Environmental Surcharges and illegal rate increases – affect the putative class members in the same manner.

57.    Moreover, this common course of conduct was devised and carried out in the same manner regardless of the circumstances of any individual customer and, therefore, the putative class members.

58.    While the amount of damage to each class member may vary, the fact and the type of damages is uniform amongst the putative class members and is resulting from

the same scheme or conduct of the Defendant. A uniform, pre-printed services agreement governs all class members' claims.

59. The shared nucleus of facts and law giving rise to this action overwhelm any individual issues which might exist. These common questions include:

a. Whether Defendant GFL used standard, pre-printed form agreements with customers;

b. Whether Defendant GFL increased the rates of the putative class members who entered into the form agreements;

c. Whether Defendant GFL's form agreement permitted Defendant GFL to increase customer's rates to adjust for increases in certain costs without notice to or the consent of the customer;

d. Whether the rate increases were in excess of any adjustments in the specific costs or underlying indices used to justify the rate increases;

e. Whether Defendant GFL's rate increases unjustly enriched the defendant;

f. Whether Defendant GFL imposed Oil / Environmental, Fuel, Environmental, or Regulatory fees on its customers;

g. Whether Defendant GFL actually had any increased fuel, environmental, disposal, or regulatory costs justifying any such fees charged its customers;

h. Whether Defendant GFL recaptures the same costs through base rate increases or by other means;

i. Whether Defendant GFL actually uses these surcharges to offset the increased costs they allegedly are tied to; and

j. Whether Defendant GFL has been unjustly enriched by receiving fees and surcharges from its customers that are not in proportion to fuel, environmental, disposal, or regulatory cost increases.

12

## IV.    CAUSES OF ACTION

**Count 1:    Breach of contract – Rate Increase Class**

60.    Plaintiff incorporates all prior paragraphs.

61.    Plaintiff and the putative class members entered into standardized form agreements with defendants.

62.    These form agreements contain identical contractual language.

63.    The defendants have breached these agreements and are liable to plaintiff and the putative class members.

64.    Plaintiff and the putative class members have performed their obligations under the standardized form agreements, including paying defendants for waste disposal services.

65.    As set forth above, defendants' practice of unilaterally increasing rates by more than allowed under the form agreements, defendants breached the agreements.

66.    As such, plaintiff and the putative class members have been directly and proximately harmed by defendants' conduct in that each was charged and paid more than permitted by the agreement between the parties.

**Count 2:    Breach of the duty of good faith and fair dealing – Rate Increase Class**

67.    Plaintiff incorporates all prior paragraphs.

68.    To the extent necessary, Plaintiff asserts this claim in the alternative.

69.    Plaintiff and the putative class members entered into standardized form agreements with defendant.

70.    These form agreements contain identical contractual language.

71.    The law implies a duty of good faith and fair dealing in each of these agreements.

72.    The defendants have breached these agreements, specifically the duty of good faith and fair dealing, and are liable to plaintiff and the putative class members.

73.    Plaintiff and the and the putative class members have performed their obligations under the standardized form agreements, including paying defendants for waste disposal services.

74.    Defendants failed to perform on the agreements in good faith by failing to fulfil their duties to adjust rates reasonably, in good faith, and as set forth in the standardized form agreements.

75.    Defendants uniform course of conduct in raising rates, not reasonably tied to the specified adjustments referenced in the form agreements and without notice to Plaintiff and the proposed class, unfairly prevented Plaintiff and the proposed class from receiving the full benefits of their agreements.

76.    As such, plaintiff and the putative class members have been directly and proximately harmed by defendants' unfair conduct in that each was charged and paid more than permitted by the agreement between the parties.

**Count 3:    Unjust Enrichment – Rate Increase Class**

77.    Plaintiff incorporates all prior paragraphs.

78.    To the extent necessary, Plaintiff asserts this claim in the alternative.

79.    Through its rate increase practices, defendants received money from Plaintiff and the putative class that it was not entitled to charge or keep.  As such, equity demands that defendants return such monies.

80.    By imposing rate increases that were not reasonably tied to the increase costs, changes in CPI, changes in the Transportation Index, and other specific reasons, by failing to notify Plaintiff or defendants' other customers of these facts, by overcharging Plaintiff and the other class members amounts well in excess, by concealing the bases for its rate increases, and by engaging in other unlawful conduct, defendants obtained a pecuniary benefit.

81.    The benefit conferred on defendants by the overpayment for services by Plaintiff and the proposed class was neither gratuitous nor voluntary.

82.    It would be inequitable to permit defendants to retain that benefit under the circumstances.

83.    Plaintiff and the putative class members have been directly and proximately harmed by defendants' inequitable conduct in that each was charged and paid more than permitted by the agreement between the parties.

**Count 4:    Unjust Enrichment – Surcharge Class**

84.    Plaintiff incorporates all prior paragraphs.

85.    To the extent necessary, Plaintiff asserts this claim in the alternative.

86.    Through its practice of charging "Oil / Environmental & Fees", "Fuel Surcharges", "Environmental Surcharges", "Regulatory Surcharges", and other fees under the guise of "Operational Expenses," that were not actually or reasonably related to such increases or that were in addition to other offsets of such increases, defendants received money from Plaintiff and the putative class that it was not entitled to charge or keep.  As such, equity demands that defendants return such monies.

87.    The defendants imposition of these surcharges and fees was done with knowledge that the surcharges and fees were not actually or reasonably related to underlying cost increases, did not track fluctuations in such costs or various indices, and were not actually used to offset such cost increases.  As a result of this inequitable conduct, defendants obtained a pecuniary benefit.

88.    The benefit conferred on defendants by the overpayment of fees and surcharges by Plaintiff and the proposed class was neither gratuitous nor voluntary.

89.    It would be inequitable to permit defendants to retain that benefit under the circumstances.

90.    Plaintiff and the putative class members have been directly and proximately

harmed by defendants' inequitable conduct in that each was charged and paid more

than permitted by the agreement between the parties.

## V.    REQUEST FOR RELIEF

91.    Plaintiff, on behalf of itself and each member of the putative classes, requests

all remedies and damages available to them, including all unlawful rate increases

paid to defendants, the Oil/Environmental & Fee and other fees and surcharges paid,

restitution, disgorgement, interest, and the attorneys fees and costs incurred in

bringing this action.

## JURY DEMAND

92.    Plaintiff and the classes demand trial by jury on all claims so triable.


Respectfully submitted,


**RICHARDSON THOMAS, LLC**

By:    *s/Chris Moore*
Chris Moore (FBN 10445)
Grace Babcock (FBN 13880)
383 W. Cheves Street
Florence SC 29501
T: 803.281.8150
chris@richardsonthomas.com


Patrick Knie
250 Magnolia St
Spartanburg, South Carolina 29306

17

Phone: (864) 582-5118
Fax: (864) 585-1615
pat@knieshealy.com